**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NSI INTERNATIONAL, INC.,

        Plaintiff,

v.

JINHUA FIDGET TOYS CO., LTD., et al.,

        Defendants.

Case No. 24-cv-11073

**Judge Lindsay C. Jenkins**

**Magistrate Judge Beth W. Jantz**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND AN AWARD OF STATUTORY DAMAGES**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................................ii

TABLE OF AUTHORITIES .....................................................................................................iii

I. BACKGROUND .............................................................................................................1

   A. NSI and the Wubble Brand ......................................................................................1

   B. Defendants' Counterfeit Products.............................................................................2

   C. Procedural History ...................................................................................................6

II. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ..............................................6

   A. Summary Judgment Standard ...................................................................................6

   B. Plaintiff Is Entitled to Summary Judgment Against Defendants on Its Trademark Infringement and Counterfeiting Claim.....................................................................7

      i. Plaintiff's WUBBLE Trademark Is Federally Registered and Incontestable .................7

      ii. Defendants Used Infringing and Counterfeit Reproductions of the WUBBLE Trademark ....................................................................................................................................7

      iii. Defendants' Use of the WUBBLE Trademark Is Likely to Cause Confusion Among Consumers...................................................................................................................8

   C. Plaintiff Is Entitled to Summary Judgment Against Defendants on Its False Designation of Origin Claim ...................................................................................11

III. PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANTS FOR TRADEMARK COUNTERFEITING............................................11

   A. The Value of the WUBBLE Trademark and Plaintiff's Enforcement Efforts..................13

   B. Defendants' Counterfeiting of the WUBBLE Trademark Was Willful ..........................13

   C. Defendants Rendered it Impossible for Plaintiff to Determine the Scope of, or Prove, Actual Damages .....................................................................................................15

   D. Defendants' Wide Exposure Over the Internet Merits Statutory Damages Award..........16

   E. The Statutory Damages Award Must Sufficiently Deter Defendants and Similar Online Sellers.....................................................................................................................16

IV. PLAINTIFF IS ENTITLED TO ATTORNEY FEES AND COSTS ................................17

V. CONCLUSION..............................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*AutoZone, Inc. v. Strick*,
    543 F.3d 923 (7th Cir. 2008) ........................................................................ 11

*Chi-Boy Music v. Charlie Club*,
    930 F.2d 1224 (7th Cir. 1991) ..................................................................... 14

*Coach, Inc. v. Treasure Box, Inc.*,
    2013 U.S. Dist. LEXIS 76607 (N.D. Ind. May 31, 2013) ............................. 12

*Curry v. Revolution Labs., LLC*,
    2024 U.S. Dist. LEXIS 114989 (N.D. Ill. June 30, 2024) ............................. 19

*Deckers Outdoor Corp. v. Australian Leather Pty*,
    2020 U.S. Dist. LEXIS 150474 (N.D. Ill. July 13, 2020) .............................. 17

*E. I. DuPont de Nemours & Co. v. Yoshida Int'l, Inc.*,
    393 F. Supp. 502 (2d Cir. 1975) .................................................................. 16

*H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.*,
    2017 U.S. Dist. LEXIS 207613 (N.D. Ill. Dec. 18, 2017) ....................... 15, 18

*H-D U.S.A., LLC v. SunFrog, LLC*,
    311 F. Supp. 3d 1000, (E.D. Wis. 2018) ...................................................... 15

*Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*,
    2005 U.S. Dist. LEXIS 26626 (N.D. Ill. Oct. 27, 2005) ............................... 14

*Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*,
    2004 U.S. Dist. LEXIS 22563 (N.D. Ill. Nov. 5, 2004) ..................... 14, 15, 17

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012) ........................................................................... 17

*Luxottica Grp. S.p.A. v. Chen*,
    2017 U.S. Dist. LEXIS 29999 (N.D. Ill. Mar. 2, 2017) ................................ 16

*Microsoft Corp. v. Rechanik*,
    249 F. App'x 476 (7th Cir. 2007) ................................................................. 10

*Monster Energy Co. v. Meng Chun Jing*,
    2015 U.S. Dist. LEXIS 86956 (N.D. Ill. July 6, 2015) ................................. 15

*MTS, Inc. v. Red Tower Records, Tapes & Video*,
    1990 U.S. Dist. LEXIS 18730 (N.D. Ill. Apr. 6, 1990) ................................. 16

*Park'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
    469 U.S. 189, 83 L. Ed. 2d 582, 105 S. Ct. 658 (1985) ................................................ 9

*Phx. Entm't, LLC v. Rumsey*,
    829 F.3d 817 (7th Cir. 2016) ................................................................................. 9

*Sands, Taylor & Wood v. Quaker Oats Co.*,
    34 F.3d 1340 (7th Cir. 1994) ....................................................................... 14, 18

*Sorensen v. WD-40 Co.*,
    792 F.3d 712 (7th Cir. 2015) ................................................................................. 11

*Te-Ta-Ma Truth Found.-Family of URI, Inc. v. World Church of the Creator*,
    392 F.3d 248 (7th Cir. 2004) ............................................................................... 19

*Tobinick v. Scripps Clinic Med. Group*,
    81 Fed. Appx. 677 (9th Cir. 2003) ....................................................................... 13

*Wheeler v. Lawson*,
    539 F.3d 629 (7th Cir. 2008) ................................................................................. 8

*Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*,
    18 F.3d 502 (7th Cir. 1994) ................................................................................. 15

## Statutes

15 U.S.C. § 1065 ............................................................................................. 4, 9

15 U.S.C. § 1114(1)(a) ......................................................................................... 9

15 U.S.C. § 1127 ................................................................................................. 10

15 U.S.C. §§ 1115(b) ........................................................................................... 9

15 U.S.C. §§ 1116 ............................................................................................... 9

17 U.S.C. § 504(c) ............................................................................................... 13

## Other Authorities

S. Rep. No. 104-177, at 10 (1995) ....................................................................... 17

## Rules

Fed. R. Civ. P. 56(a) ............................................................................................. 8

iv

## MEMORANDUM

Pursuant to Fed. R. Civ. P. 56, Plaintiff NSI International, Inc. ("Plaintiff" or "NSI") submits this Memorandum in Support of its Motion for Summary Judgment on its trademark infringement, counterfeiting, and false designation of origin claims, an award of statutory damages on its trademark infringement and counterfeiting claim, and an award of attorney fees and costs against Defendants HONGBING Co.Ltd (Def. No. 33), HUAZAN Co.Ltd (Def No. 35), SIJI Co.Ltd (Def. No. 43), and YISHAO Co.Ltd (Def. No. 50) ("Defendants").

## I.    BACKGROUND

### A.    NSI and the Wubble Brand

Plaintiff is a global marketer and manufacturer of creative toy and consumer products. [Plaintiff's Local Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment ("PSF") 2]. Plaintiff has been creating some of the most popular and innovative toys for many years and Plaintiff's products can be found in thousands of retail locations in more than 30 countries around the globe, including major retailers such as Target, Walmart, and Amazon.com. [PSF 2]. One of the most popular NSI products is the WUBBLE bubble ball (the "NSI Products"). [PSF 13].

The WUBBLE bubble ball, introduced to the market in 2014, is a soft and lightweight bubble toy that looks like a bubble, but plays like a ball. [PSF 14]. In its debut year, the WUBBLE bubble ball was an instant hit: it was awarded the "Mr. Dad Seal of Approval" by Armin Brott of Mr. Dad, was awarded the 2014 Oppenheim Toy Portfolio Best Toy Award, received the National Parenting Center Seal of Approval, and was selected by Target as a 2014 Top Toy for the Holiday Season. [PSF 15]. In 2018, WUBBLE bubble ball videos posted on YouTube collectively garnered over one billion views and one million likes from over 30 countries. [PSF 16]. To date, over 80 million WUBBLE bubble balls have been sold worldwide. [PSF 12].

1

NSI Products, including the WUBBLE bubble ball, are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, through authorized online retailers like Target.com and Kohls.com, and through websites such as wubbleball.com. [PSF 18]. Sales of NSI Products via wubbleball.com and other authorized websites are significant, and feature proprietary content, images, and designs exclusive to Plaintiff. [PSF 18].

Plaintiff has registered many of its trademarks with the U.S. Patent and Trademark Office on the Principal Register, including, but not limited to, the below registration (the "WUBBLE Trademark"). [PSF 20].

| REGISTRATION NO. | TRADEMARK |
|---|---|
| 4,728,740 | WUBBLE |

The above U.S. registration for the WUBBLE Trademark is valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. [PSF 21]. The WUBBLE Trademark has been used exclusively and continuously by Plaintiff and has never been abandoned. [PSF 22]. The WUBBLE Trademark is used to advertise, promote, and market NSI Products. [PSF 22]. Plaintiff has spent substantial time, money, and other resources in developing, advertising, and otherwise promoting the WUBBLE Trademark and NSI Products. [PSF 23].

**B.    Defendants' Counterfeit Products**

Defendants are Chinese entities that operate e-commerce stores on Walmart.com ("Walmart") under the seller aliases identified as HONGBING Co.Ltd, HUAZAN Co.Ltd, SIJI Co.Ltd, and YISHAO Co.Ltd. [PSF 3-6]. Defendants advertised, offered for sale, and sold bubble ball toys using the WUBBLE Trademark (the "Counterfeit Products") on their Walmart stores. [PSF 25]. The Counterfeit Products are bubble ball toys offered for sale and sold for between

2

$8.17 and $11.49. [PSF 25]. Specifically, as shown in *Figures 1-4* below, each of the Defendants sold "bubble balls" using the WUBBLE Trademark in the product titles. *Figures 1-4*; [PSF 25].



*Figure 1 (HONGBING Co.Ltd)*



*Figure 2 (HUAZAN Co.Ltd)*

3



*Figure 2 (SIJI Co.Ltd)*



*Figure 4 (YISHAO Co.Ltd)*

Plaintiff reviewed the product listings for each of the Counterfeit Products, and determined Defendants infringed Plaintiff's WUBBLE Trademark. [PSF 31-46]. Plaintiff has not licensed or authorized Defendants to use the WUBBLE Trademark, and Defendants are not authorized retailers of genuine NSI Products. [PSF 31-46]. Between July 5, 2024, and September 23, 2024, Plaintiff's investigators ordered the Counterfeit Products from Defendants, entered an Illinois address (which was Plaintiff's counsel's address) as the shipping address, and paid for the Counterfeit Products. [PSF 31-46]. Plaintiff's investigators received order confirmations and subsequent e-mails confirming that the Counterfeit Products had shipped to Illinois. [PSF 31-46].

During discovery, Defendants HONGBING Co.Ltd, SIJI Co.Ltd, and YISHAO Co.Ltd produced[1] screenshots of indeterminate time range showing that each Defendant sold and accepted money for at least 2 units of Counterfeit Products. [PSF 50-57]. However, Defendants did not indicate whether those were the totality of Defendants' sales of the Counterfeit Product. [PSF 50]. The screenshots also did not indicate the identity or location of the purchasers, the shipping addresses, the status of the sales, or the status of the deliveries. [PSF 50-57]. Further, the screenshots were only indicative of sales of one product (ID 2184981073); Defendants did not complete a search for other products that infringed the WUBBLE Trademark or provide Plaintiff a list of their other products that would allow Plaintiff to investigate whether those products infringe the WUBBLE Trademark. [PSF 57]. Defendants also did not provide an accounting for funds restrained in their Walmart accounts. [PSF 58].

---

[1] Defendant HUAZAN Co.Ltd has not responded to discovery in this case. [PSF 60].

## C.    Procedural History

Plaintiff filed this action on October 28, 2024 [1].  On October 31, 2024, the Court entered a Temporary Restraining Order ("TRO")[2] that, among other things, enjoined Defendants from infringing the WUBBLE Trademark, and ordered Walmart to provide expedited discovery regarding Defendants' contact information and sales and restrain funds in Defendants' Walmart accounts.  [22] at ¶¶ 1-2, 4-5.  On November 6, 2024, pursuant to the TRO [22], Walmart provided Defendants' contact information, confirmed that the accounts had been restrained, and provided the balances of Defendants' Walmart accounts as shown in Figure 5 below.  [PSF 47].

| Defendant | Balance as of Nov. 6, 2024 |
|---|---|
| HONGBING Co.Ltd | $14,757.04 |
| HUAZAN Co.Ltd | $1,258.73 |
| SIJI Co.Ltd | $18,718.73 |
| YISHAO Co.Ltd | $11,195.52 |

*Figure 5*

## II.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

### A.    Summary Judgment Standard

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing 'that there is an absence of evidence to support the non-moving party's case.'"  *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

---

[2] The Court entered a Preliminary Injunction extending the relief granted in the TRO for the pendency of this action.  [38].

**B.      Plaintiff Is Entitled to Summary Judgment Against Defendants on Its Trademark Infringement and Counterfeiting Claim**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act when it, "without the consent of the registrant[,] use[s] in commerce, any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).  To prevail on a trademark infringement claim, "a plaintiff must be able to show (1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers." *Phx. Entm't, LLC v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016) (internal citation omitted).

### i.    Plaintiff's WUBBLE Trademark Is Federally Registered and Incontestable

The WUBBLE Trademark is registered with the United States Patent and Trademark Office on the Principal Register.  [PSF 20].  The registration for the WUBBLE Trademark is valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065.  [PSF 21].  Incontestable status under 15 U.S.C. § 1065 means the registration for the WUBBLE Trademark is conclusive evidence of the registration and validity of the WUBBLE Trademark, Plaintiff's ownership of the WUBBLE Trademark, and Plaintiff's exclusive right to use the WUBBLE Trademark in commerce.  15 U.S.C. §§ 1115(b); 1065.  *See Park'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 83 L. Ed. 2d 582, 105 S. Ct. 658 (1985).  As such, Plaintiff satisfies the first element of its claim.

### ii.    Defendants Used Infringing and Counterfeit Reproductions of the WUBBLE Trademark

Trademark infringement amounts to counterfeiting when an infringer's violation consists of: (1) using a "spurious mark which is identical with, or substantially indistinguishable from, a

registered mark,"[3] (2) in connection with the same goods referenced in the registration certificate. *See* 15 U.S.C. §§ 1116(d)(1)(B), 1117(b)-(c), 1127. Here, Defendants advertised, offered for sale, and sold bubble ball toys using a mark that was identical to, or substantially indistinguishable from, the WUBBLE Trademark. *See* Figures 1-4, *supra*. [PSF 24-26]. Bubble ball toys are the same goods referenced in the WUBBLE Trademark registration certificate ("inflatable balls"). *See* [PSF 20]. As such, Defendants' trademark infringement amounts to counterfeiting within the meaning of 15 U.S.C. § 1127.

### iii. Defendants' Use of the WUBBLE Trademark Is Likely to Cause Confusion Among Consumers

As to the second element of Plaintiff's trademark infringement claim, the question of whether a defendant's use will cause a likelihood of confusion "may be resolved on summary judgment 'if the evidence is so one-sided that there can be no doubt about how the question should be answered.'" *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677 (7th Cir. 2001).

Under Seventh Circuit precedent, when "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Defendants used marks that were identical to, or indistinguishable from, the WUBBLE Trademark to capitalize on the popularity and success of the highly popular and lucrative WUBBLE bubble ball toys. *See* Figures 1-4, *supra*. [PSF 3-6, 25-46]. As such, there is a presumption that Defendants' unauthorized use of the WUBBLE Trademark is likely to cause confusion among consumers.

---

[3] *See* Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, H12078 ("Spurious" means "not genuine or authentic").

The result is the same when considered in light of the Seventh Circuit's seven factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" its products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).

Defendants advertised, offered for sale, and sold their Counterfeit Products (bubble ball toys) using marks identical to the WUBBLE Trademark. Figures 1-4, *supra*; [PSF 25]. Consumers who encounter Defendants' Counterfeit Product are likely to believe that it is associated with the WUBBLE brand and are further likely to believe that the Counterfeit Products are genuine NSI Products. *See AutoZone,* F.3d at 929; *see Sorensen v. WD-40 Co.*, 792 F.3d 712, 728-29 (7th Cir. 2015). Thus, the first and second factors favor Plaintiff.

Regarding the third factor, courts consider "whether the parties use the same channels of commerce, target the same general audience, or use similar marketing procedures." *Sorensen*, 792 F.3d at 730. As to the fourth factor, the general rule is that "the more widely accessible and inexpensive the products . . . the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone*, 543 F.3d at 933 (quoting *CAE*, F.3d at 683). Here, Defendants sells their Counterfeit Products through Walmart, an online retailer, and Plaintiff sells NSI Products through online retailers including Amazon and Kohl's. [PSF 18, 25]. The Counterfeit Products are offered for sale and sold for between $8.17 and $11.49, and a substantially identical looking, genuine NSI Products are sold on Amazon for $23.98. [PSF 19, 25]. Because both Plaintiff and Defendants sell their products through online retailers for a low price, the third and fourth factors also favor Plaintiff. *See Entm't One*, 384 F. Supp. 3d at 951 (finding that

"[b]ecause [Plaintiff's and Defendant's] products were widely accessible for anyone to purchase on eBay, and sold at a low price point, this factor weighs in Plaintiff's favor").

As to the fifth factor, the WUBBLE Trademark is a famous mark and has been used in commerce in the United States for years. *See* [PSF 20]. Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the WUBBLE Trademark. [PSF 24]. NSI Products bearing the WUBBLE Trademark, including the WUBBLE bubble ball toys, have received extensive unsolicited publicity. [PSF 13-17]. *See Coach, Inc. v. Treasure Box, Inc.*, No. 3:11 CV 468, 2013 U.S. Dist. LEXIS 76607, at *19 (N.D. Ind. May 31, 2013) ("Coach has established that its Marks are strong, as evidenced by the millions of dollars that it spends annually in advertising, marketing, and promoting its goods bearing the marks; the billions of dollars in annual revenue from sales of goods bearing the Coach Marks; and the understanding that the purchasing public has that the Coach Marks signify Coach goods"). The fifth factor weighs in Plaintiff's favor.

Plaintiff does not need to prove actual consumer confusion; rather it only needs to show a likelihood of confusion exists, particularly given the compelling evidence that the Defendants are attempting to "palm off" their products as being genuine NSI Products. *CAE*, 267 F.3d at 685. Further, the Court may infer Defendants' intent to confuse consumers "from the similarity of the marks where the senior mark has attained great notoriety." *AutoZone*, 543 F.3d at 934. Here, Defendants' intent to "palm off" their Counterfeit Product as a genuine WUBBLE bubble ball toys is obvious based on Defendants' use of substantially similar, if not identical, versions of the WUBBLE Trademark in the product listing titles of the Counterfeit Products.

In sum, the undisputed material facts are "so one-sided that there can be no doubt" that all of the likelihood of confusion factors favor Plaintiff. *CAE,* 267 F.3d at 677

.  Therefore, Plaintiff is entitled to summary judgment on its trademark infringement and counterfeiting claim as a matter of law.

### C.  Plaintiff Is Entitled to Summary Judgment Against Defendants on Its False Designation of Origin Claim

The test for trademark infringement under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a) are the same.  *CAE,* 267 F.3d at 673-74.  Since Plaintiff has established it is entitled to summary judgment on its trademark infringement and counterfeiting claim (Count I), it is also entitled to summary judgment on its false designation of origin claim (Count II).

## III.  PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANTS FOR TRADEMARK COUNTERFEITING

Plaintiff seeks to recover an award of statutory damages of $75,000 from each Defendant as authorized by 15 U.S.C. § 1117(c) for Defendants' advertising, offering for sale, and sale of Counterfeit Products.[4]  A plaintiff in a counterfeiting case may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(1).  When the counterfeiting is willful, plaintiff may receive up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed.  15 U.S.C. § 1117(c)(2).  The amount sought is reasonable in light of the relevant factors, including: (1) the value of the WUBBLE Trademark and Plaintiff's efforts to promote and enforce the WUBBLE Trademark, (2) Defendants' willfulness, (3) Plaintiff's inability to prove actual damages, (4) Defendants' wide exposure over the Internet; (5) deterrence of Defendants; and (6) deterrence of similar online e-commerce sellers.

Statutory damages under 15 U.S.C. § 1117(c) are a "matter within the sole province of the court."  *Tobinick v. Scripps Clinic Med. Group*, 81 Fed. Appx. 677, 679 (9th Cir. 2003).  Courts

---

[4] Pursuant to 17 U.S.C. § 1117(d), Plaintiff may, "at any time before final judgment is rendered" elect to recover an award of statutory damages, instead of actual damages and profits.

interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.,* 2004 U.S. Dist. LEXIS 22563, at *10 (N.D. Ill. Nov. 5, 2004). The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages "enjoys wide discretion." *Id.* In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id.* Courts in this District have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote, and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16.

An award of statutory damages serves dual interests in that it is remedial in nature but also intended to protect an important public interest. *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1347-48 (7th Cir. 1994). Thus, courts have looked beyond restitution of profit and restoration of injury to award damages, holding that deterrence of future infringement by the Defendants and others situated like them is an important factor. *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, 2005 U.S. Dist. LEXIS 26626, at *16 (N.D. Ill. Oct. 27, 2005). Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – an infringer "must fear more than just having to turn over his ill-gotten gains to the rightful owners." *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *17. Given the broader economic losses and harm to the job market caused by infringement, coupled with the

12

possible dangers to consumers who are tricked into purchasing low quality, infringing products over the Internet, it is important to both penalize defendant and deter future violations. *Id.* at *18.

### A. The Value of the WUBBLE Trademark and Plaintiff's Enforcement Efforts

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Wubble] brand and the efforts taken to protect, promote, and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the WUBBLE Trademark and NSI Products. [PSF 24]. Because the success of the WUBBLE brand has resulted in significant counterfeiting of the WUBBLE Trademark, Plaintiff has a worldwide anti-counterfeiting program to protect the WUBBLE brand. *See* [PSF 29]. Plaintiff has continuously and actively enforced its trademark rights, including filing trademark infringement and counterfeiting lawsuits. [PSF 30]. The requested statutory damages award should be given favorable consideration in view of the value of the WUBBLE Trademark, and the extensive steps taken by Plaintiff to protect, promote and enhance the WUBBLE Trademark and the WUBBLE brand. *See Monster Energy Co. v. Meng Chun Jing*, No. 15 C 277, 2015 U.S. Dist. LEXIS 86956, at *11 (N.D. Ill. July 6, 2015).

### B. Defendants' Counterfeiting of the WUBBLE Trademark Was Willful

Defendants' counterfeiting was willful and, therefore, at a minimum, warrants the requested statutory damages award. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.,* No. 16-cv-10096, 2017 U.S. Dist. LEXIS 207613, at *13 (N.D. Ill. Dec. 18, 2017). "Infringement is willful when the infringer knows that it is infringing or acts 'in reckless disregard'" of that possibility." *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1045 (E.D. Wis. 2018) (citing *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511, 514 (7th Cir. 1994)). Knowledge or reckless disregard need not be proven directly but can be inferred. *Id.*

13

The Court can infer from Defendants' conduct that they had knowledge that their conduct constituted infringement. The WUBBLE Trademark is fanciful, with no meaning in any language. "Arbitrary or fanciful marks are considered "strong," and are given "strong" protection, i.e., protection over a wide range of related products and variations of visual and aural format. The rationale is that the more distinctive, unique, and well-known the mark, the deeper is the impression it creates upon the public's consciousness and the greater the scope of protection to which it is entitled." *MTS, Inc. v. Red Tower Records, Tapes & Video*, 1990 U.S. Dist. LEXIS 18730, at *14 (N.D. Ill. Apr. 6, 1990). Because Defendants used the exact same mark on the exact same goods as Plaintiff, and "wubble" serves only as a source identifier for Plaintiff's NSI Products, the only conceivable purpose for Defendants' use of the WUBBLE Trademark was to trade on Plaintiff's goodwill. While "doubts about intent are resolved against the newcomer, . . . a reasonable explanation of its choice is essential to establish lack of intent to deceive, specially [sic] where the prior mark is a coined or fanciful one." *E. I. DuPont de Nemours & Co. v. Yoshida Int'l, Inc.*, 393 F. Supp. 502, 514-15 (2d Cir. 1975) (comparing plaintiff's mark, TEFLON, to defendant's, EFLON). There is no reasonable explanation for Defendants' use of the identical coined WUBBLE Trademark on the exact same goods.

The NSI Products are widely recognized, internationally popular, and readily accessible to the public over the internet, and the marks Defendants used are identical to the WUBBLE Trademark. *See* Figures 1-4, *supra*. [PSF 25]. At the very least, Defendants were acting with willful blindness and a reckless disregard of Plaintiff's trademark rights when they advertised, offered to sell, and sold the Counterfeit Products using counterfeit reproductions of the WUBBLE Trademark. *See Luxottica Grp. S.p.A. v. Chen*, 2017 U.S. Dist. LEXIS 29999, at *6 (N.D. Ill. Mar. 2, 2017).

14

As such, Defendants' counterfeiting of the WUBBLE Trademark had to be willful, because Defendants either had knowledge that their conduct constituted infringement, or at a minimum, showed a reckless disregard for Plaintiff's trademark rights.

### C. Defendants Rendered it Impossible for Plaintiff to Determine the Scope of, or Prove, Actual Damages

Congress added 15 U.S.C. § 1117(c), the statutory damages provision, "because proving actual damages in counterfeiting cases is 'extremely difficult if not impossible.'" *Deckers Outdoor Corp. v. Australian Leather Pty*, No. 16 CV 3676, 2020 U.S. Dist. LEXIS 150474, at *12-13 (N.D. Ill. July 13, 2020) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83, 110 n.27 (2d Cir. 2012) (quoting S. Rep. No. 104-177, at 10 (1995)). This is because "a counterfeiter might hide, alter or destroy records, thus making it impossible for a plaintiff to determine the scope of, or be able to prove, actual damages." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *10 (citations omitted).

During discovery, Defendants HONGBING Co.Ltd, SIJI Co.Ltd, and YISHAO Co.Ltd provided Plaintiff with deficient responses and minimal document production, and Defendant HUAZAN Co.Ltd did not respond to discovery at all. [PSF 50]. In total, Defendants HONGBING Co.Ltd, SIJI Co.Ltd, and YISHAO Co.Ltd each produced between 11 and 13 pages of document production, of which between 5 and 6 pages in each set consisted of the screenshot evidence originally filed as Plaintiff's Exhibit 2 to the Declaration of Frank Landi Jr. [16-1]; [PSF 50]. The evidence Defendants HONGBING Co.Ltd, SIJI Co.Ltd, and YISHAO Co.Ltd did provide Plaintiff showed that each Defendant sold and accepted money for at least 2 units of Counterfeit Products. [PSF 51-59]. However, Defendants did not indicate whether those were the totality of Defendants' sales of the Counterfeit Products, provide an accounting for funds restrained in their Walmart accounts, complete a search for other products that infringe the WUBBLE Trademark, or provide

Plaintiff a list of its other products that would allow Plaintiff to investigate whether Defendants' other products infringe the WUBBLE Trademark. [PSF 57-59]. Defendants rendered it impossible for Plaintiff to prove the scope of Defendants' infringement and actual damages; as such, Plaintiff should be entitled to the requested statutory damage award.

### D.  Defendants' Wide Exposure Over the Internet Merits Statutory Damages Award

Defendants' ability to reach a vast customer base by advertising, offering for sale, and selling Counterfeit Products over the Internet through their Walmart stores further merits the requested statutory damages award. Defendants reach an enormous audience by selling their Counterfeit Product through Walmart; in 2024, Walmart reported its e-commerce sales surpassed $100 billion. [PSF 61]. Courts in this District have recognized the ability for e-commerce stores to reach a vast customer base and factored in this wide market exposure when calculating statutory damages. *See H-D U.S.A., LLC*, 2017 U.S. Dist. LEXIS 207613, at *11 ("the fact that defendant's counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider audience than counterfeiting through a physical store").

### E.  The Statutory Damages Award Must Sufficiently Deter Defendants and Similar Online Sellers

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. Defendants have been named previously in another infringement case before this Court. [PSF 8-9]. Thus, there is a substantial need to award a damages award large enough to deter Defendants from again engaging in infringing and counterfeiting behavior. Similarly, there is a substantial need to deter other online sellers from engaging in infringing and counterfeiting conduct. According to the Fiscal Year 2021 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, CBP made over 27,000 seizures of goods with intellectual

property rights violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. [PSF 62].

## IV.    PLAINTIFF IS ENTITLED TO ATTORNEY FEES AND COSTS

The Lanham Act authorizes courts to, "in exceptional cases . . . award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  The Seventh Circuit has said that "[d]istrict courts should use the broad equitable powers afforded them under § 1117(a)" to "properly serve[] the statute's goals of enforcing the trademark laws." *Te-Ta-Ma Truth Found.-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 264-65 (7th Cir. 2004).  Courts consider "the totality of the circumstances" and in particular consider the losing party's "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Curry v. Revolution Labs., LLC*, No. 17 C 2283, 2024 U.S. Dist. LEXIS 114989, at *6-*7 (N.D. Ill. June 30, 2024).

Defendants willfully infringed the WUBBLE Trademark.  At least two of the Defendants are also known infringers, thus there is a compelling interest in awarding statutory damages to deter Defendants from engaging in infringing conduct again.  There is a similar and equally compelling interest in deterring other online e-commerce infringers and counterfeiters as well. Finally, Defendants intended to palm off their Counterfeit Product as genuine NSI Products.  For these reasons, this case is an exceptional one under the meaning of 15 U.S.C. § 1117(a), and Plaintiff respectfully requests the Court award Plaintiff attorney fees and costs.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting summary judgment against Defendants for federal trademark infringement and counterfeiting (Count I) and false designation of origin (Count II).  Plaintiff further requests the

Court award Plaintiff $75,000 from each of the Defendants in statutory damages. Plaintiff also respectfully requests an award of attorney fees and costs associated with this action.

Dated this 28th day of April 2025.                    Respectfully submitted,

                                                      /s/ Justin R. Gaudio
                                                      Amy C. Ziegler
                                                      Justin R. Gaudio
                                                      Rachel S. Miller
                                                      Jennifer V. Nacht
                                                      Greer, Burns & Crain, Ltd.
                                                      200 West Madison Street, Suite 2100
                                                      Chicago, Illinois 60606
                                                      312.360.0080
                                                      312.360.9315 (facsimile)
                                                      aziegler@gbc.law
                                                      jgaudio@gbc.law
                                                      rmiller@gbc.law
                                                      jnacht@gbc.law

                                                      *Counsel for Plaintiff NSI International, Inc.*