UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NSI International, Inc., *Plaintiff*, v. Jinhua Fidget Toys Co., Ltd., *et al.*, *Defendants*. | No. 24 CV 11073 Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

NSI International, Inc. filed this action against numerous e-commerce Defendants for federal trademark infringement and counterfeiting under 15 U.S.C. § 1114 (Count I) and false designation of origin under 15 U.S.C. § 1125(a) (Count II). [Dkt. 1.] NSI now moves for summary judgment against the remaining Defendants, Hongbing Co.Ltd, Huazan Co. Ltd,[1] Siji Co. Ltd, and Yishao Co. Ltd. Because Defendants have presented no evidence that would allow a reasonable jury to find in their favor, the Court grants the motion.

I. Background

NSI is a toy maker and one of its products includes the WUBBLE bubble ball, "a soft and lightweight bubble toy that looks like a bubble, but plays like a ball." [Dkt. 82, ¶¶ 13, 14.][2] More than 80 million WUBBLE bubble balls have been sold worldwide. [*Id.*, ¶ 17.] It is undisputed that NSI registered the trademark WUBBLE; that it has a valid registration on the WUBBLE trademark; that it exclusively and continuously used and never abandoned the mark; and that it used the mark to advertise, promote, and market NSI Products. [*Id.*, ¶¶ 20–23.]

---

[1] Defendant Huazan Co. Ltd. was represented by counsel in this case until the court granted counsel's motion to withdraw. Huazan has not responded in any way to NSI's motion for summary judgment. Thus, while the facts are undisputed, this does not absolve the Court of its responsibility to determine whether NSI has "'show[n] that summary judgment [is] proper given the undisputed facts,' with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)) (noting that summary judgment may not be granted against the nonmovant when she fails to file a response "as some kind of sanction").

[2] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

Each Defendant operates e-commerce stores on Walmart.com that offered and sold bubble ball toys. [Dkt. 82, ¶¶ 25–26.] Defendants' product listings "sold 'bubble balls' using the WUBBLE trademark in the product titles." [*Id.*] Prior to filing this lawsuit, NSI ordered at least one of each of Defendants' products for shipment to an Illinois address. [*Id.*, ¶¶ 32–46.]

## II.   Legal Standard

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III.   Analysis

Under the Lanham Act, a party may assert claims for trademark infringement, *see* 15 U.S.C. § 1114(1). To prevail on such a claim, a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). Similarly, to prevail under its false designation of origin claim under § 1125(a), a plaintiff must show that: (1) the defendant used a false designation of origin or false representation in connection with its goods; (2) the defendant caused those goods to enter interstate commerce; and (3) consumers are likely to be confused by the false representation. *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990).

There is no dispute that the WUBBLE trademark is a valid and incontestable mark, that NSI has the exclusive right to use the trademark in commerce, and that Defendants have used the mark without authorization to sell their own goods through Walmart.com. [Dkt. 83 at 3; Dkt. 82 ¶¶ 20–23.]

Defendants do not respond to NSI's analysis of "likelihood of confusion," but because Defendants do dispute liability, the court briefly addresses this element. Courts employ a seven-factor test to determine likelihood of confusion: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). No single factor

is dispositive, but factors (1), (6), and (7) are especially important. *Id*. Whether likelihood of confusion exists is generally a question of fact, but may be resolved on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *CAE, Inc. v. Clean Air Eng., Inc.*, 267 F.3d 660, 677 (7th Cir. 2001) (quoting *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 173 (7th Cir. 1996)). NSI provides sufficient evidence to clear that bar, leaving no doubt that a likelihood of confusion exists among consumers. [Dkt. 74 at 8-10.]

To be sure, Defendants advertised, offered for sale, and sold their bubble ball toys using marks identical to the WUBBLE trademark. [Dkt. 82, ¶ 25]. Consumers who encounter Defendants' stores are likely to believe that they are associated with the WUBBLE brand and that the products are genuine NSI products. Because Defendants sell their products for a slightly lower price through online retailer Walmart.com for between $8 and $11, and NSI sells its products through online retailers Amazon and Kohl's for about $24, the third and fourth factors are satisfied. [Dkt. 82, ¶¶ 19, 25]. And there is no dispute that the WUBBLE mark is a mark that has been used in commerce in the United States for years. Given these undisputed facts, no reasonable jury looking at the factors weighed together would find in Defendants' favor on this issue.

Although Defendants do not dispute likelihood of confusion, they do argue that use of the WUBBLE mark constitutes descriptive fair use under 15 U.S.C. § 1115(b)(4), which provides that a defendant in a trademark infringement action may invoke the affirmative defense of fair use by showing that the alleged infringement "'is a use, otherwise than as a mark ... which is descriptive of and used fairly and in good faith only to describe the goods or services of such party.' This defense 'is based on the principle that no one should be able to appropriate descriptive language through trademark registration.'" *Sorensen*, 792 F.3d at 722 (quoting *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001)). "To prevail on a fair use defense, a defendant must show that: (1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith." *Id*.

Defendants argue that the relevant Walmart.com product listings reference the word WUBBLE only once, "buried in a longer descriptive phrase." [Dkt. 83 at 3.] For example, Defendants Siji, Hongbing and Huazan's listings each describe a "Tcwhniev Bubble Ball 27-31 inch Giant Inflatable Water Bubble Ball Wubble Bubble Ball Water-Filled Bubble Ball Soft Rubber Bounce Toy Ball." [Dkt. 82, ¶ 25.] Defendant Yishao describes a "IXTIX Bubble Ball 27-31 inch Giant Inflatable Water Bubble Ball Wubble Bubble Ball …." [*Id*.] Defendants say that the Tcwhniev branding reflects that the item "was offered under the Tcwhniev brand rather than the WUBBLE brand." [Dkt. 83 at 3.] This, they argue, creates a genuine issue of material fact about whether the isolated and non-prominent use of WUBBLE within a lengthy

3

description constitutes a "source-identifying use, or merely descriptive language referencing a bubble-ball toy." [*Id.* at 4.]

The court does not agree. "A descriptive term ordinarily names a characteristic of a product or service." *Sorensen*, 792 F.3d at 724. The test of descriptiveness is "one of consumer perception—how is [the term] perceived by the average prospective consumer?" *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 953 (7th Cir. 1992). Here, as NSI argues, the WUBBLE mark is found in the very title of the product listing, where a consumer might expect to find the brand name. More than that, the words in the title describe WUBBLE in connection with a soft rubber toy ball, something that is "attention-getting" and designed to drive traffic to its listings. Nor do Defendants say how use of the term WUBBLE refers to any characteristic or aspect of the products—indeed, they use the term together with "bubble ball" to describe the counterfeiting products. The fair use defense fails.

Since NSI has established it is entitled to summary judgment on its trademark infringement and counterfeiting claim (Count I), it is also entitled to summary judgment on its false designation of origin claim (Count II). *CAE*, 267 F.3d at 673–74.

## IV. Damages

NSI argues that Defendants engaged in willful infringement, and it seeks an award of statutory damages of $75,000 from each Defendant. Under § 1117(c)(1), a plaintiff in a case involving the use of a counterfeit mark may elect to recover an award of statutory damages in an amount between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court orders just." 15 U.S.C. § 1117(c)(1). And "if the court finds that the use of the counterfeit mark was willful," the ceiling for statutory damages is raised to $2,000,000 per mark per type of goods or services. *Id.* § 1117(c)(2). Beyond providing a range of possible statutory damages awards, the statute provides no guidance on determining the award amount. But the analogous provision for statutory damages in copyright infringement cases, 17 U.S.C. § 504(c), is instructive. *See Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). In *Chi-Boy*, the Seventh Circuit explained that courts enjoy wide discretion in awarding statutory damages and may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Id.* (quoting F.*E.L. Publ'ns v. Cath. Bishop of Chi*., 754 F.2d 216, 219 (7th Cir. 1985)). In cases of willful infringement, courts may design the statutory damages award "to penalize the infringer and to deter future violations." *Id.* at 1230.

Defendants argue that the infringement was not willful. [Dkt. 83 at 4.] Specifically, they argue that the use of the "TCWHNIEV" or "IXTIX" labels, together with an incidental mention of "WUBBLE" appeared only once on a longer product

4

description that was "created and modified by multiple sellers." [*Id*.] From their perspective, Defendants merely offered and sold products through a generic Walmart.com product listing, but did not design or intentionally promote a product bearing the WUBBLE mark.

A defendant engages in willful infringement if he knew that his conduct constituted infringement or if he acted in reckless disregard of the owner's rights. *See Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511–12 (7th Cir. 1994); *see also Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) ("Willful blindness is knowledge enough.") Knowledge may be inferred from the infringer's conduct. *See Wildlife*, 18 F.3d at 511.

The court agrees with Defendants that the evidence of willfulness is not overwhelming, but the undisputed evidence concerning the obviousness of the marks, and the affirmative, unauthorized use of the marks in advertising bubble ball toys demonstrates that defendant "suspect[ed] wrongdoing and deliberately fail[ed] to investigate," evidencing willful blindness. *Hard Rock Cafe Licensing Corp. v. Concession Servs.*, Inc., 955 F.2d 1143, 1149 (7th Cir. 1992). This finding justifies a meaningful damages award to penalize Defendants and deter future violations.

Defendants also argue that a minimal damages award is warranted because they derived *de minimis* revenue from the accused listings, as illustrated by the fact that Defendant Yishao refunded both purchase orders. [Dkt. 81, ¶ 8 (describing two refunds totally $22.98).] Because the "amount of actual damages is fully ascertainable," Defendants argue that a large statutory award is neither necessary nor appropriate. [Dkt. 83 at 5.]

It is undisputed that, through written discovery, Defendants Hongbing, Siji and Yishao produced some records (including screenshots) indicating they sold and accepted money for a minimal number of units per Defendant, though there is no reason to conclude that written discovery revealed the totality of Defendants' sales of the counterfeit products. [Dkt. 82, ¶¶ 51–56.] The material Defendants did provide does not indicate the identity or location of the purchasers, the shipping addresses, the status of the sales, or the status of the deliveries. [*Id*.] Nor did Defendants provide an accounting for the funds restrained in their Walmart accounts.

Because NSI has elected to recover statutory damages rather than actual damages, they need not prove their actual losses. Even though the evidence tends to show that the number of actual sales appears to be low, there is no doubt that Defendants can reach a worldwide customer base on Walmart.com. The proliferation of lower-quality counterfeit products can harm a trademark owner's brand and goodwill, and nationwide exposure makes NSI's actual losses difficult to calculate, which only reinforces the need to award damages sufficient to deter similar conduct by Defendants and others. Still, NSI has not come forward with evidence to support

damages in the range of $75,000, particularly given the price point of its toy ball. And there is no evidence that Defendants operate a large-scale counterfeiting operation or that NSI suffered significantly from these particular instances of infringement.

Considering the need for deterrence, the limited profits from a small number of known infringing sales, the refunds, Walmart's purported role in creating the product link in question, and Defendants' ability to reach a vast customer base, a $20,000 award per Defendant is a sufficient statutory damages award.

## V. Attorney's Fees and Costs

NSI seeks recovery of their attorney's fees and costs. As the prevailing parties, plaintiffs are entitled to costs. Fed. R. Civ. P. 54(d)(1). Attorney's fees are recoverable under 15 U.S.C. § 1117(a) "in exceptional cases," including when defendant's conduct is willful. *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994). In assessing damages under § 1117(a), courts "shall" award reasonable attorney's fees in cases involving the intentional use of a counterfeit mark, unless they find extenuating circumstances. 15 U.S.C. § 1117(b). "Willful blindness is sufficient to trigger the mandatory provisions of [§ 1117(b)]." *Hard Rock Cafe*, 955 F.2d at 1151. Attorney's fees are available when plaintiffs opt to receive statutory damages under 15 U.S.C. § 1117(c), as well. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012). Defendants do not identify any extenuating circumstances that would preclude the awarding of attorney's fees. Accordingly, reasonable attorney's fees and costs shall be awarded to NSI.

## VI. Conclusion

For the foregoing reasons, the motion for summary judgment, dkt. 73, is granted.

Enter: 25 C 11073
Date: July 11, 2025

Lindsay C. Jenkins